UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

VONELL THIGPEN,

        Plaintiff,

  v.                                                  Case No. 21-cv-495-pp

LIEUTENANT EDWARDS,
C.O. WAISMAN, C.O. LEAKA,
WARDEN JOHNSON,
and DIRECTOR EVERS,

        Defendants.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT

---

Plaintiff Vonell Thigpen, who currently is confined at Fox Lake Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his civil rights. Dkt. No. 1. He also filed a motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. Because all the parties have not had the opportunity to decide whether to consent to a magistrate judge issuing final orders in the case, the case was randomly referred to a U.S. District Court judge for the limited purpose of screening the complaint. The clerk's office will return the case to Magistrate Judge Stephen C. Dries for further proceedings after entry of this order. This order resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee and screens the complaint.

**I.      Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let a prisoner plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On April 21, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $30.88 by May 12, 2021. Dkt. No. 6. The court received that fee on May 4, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil

Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The plaintiff has sued Lieutenant Edwards, Corrections Officer II Waisman, Corrections Officer II Leaka, Warden Johnson, Security Director Evers and Corrections Officer I Johnson—at the time of the events alleged in the complaint, all were employed at the Milwaukee Secure Detention Facility.

3

Dkt. No. 1 at 1. He indicates that he is in custody as a Division of Community Custody Parolee. Id. at 4.

The plaintiff alleges that on February 10, 2021, while he was confined at the Milwaukee Secure Detention Facility in cell block 7-A North in cell A-8, C.O. Johnson[1] opened his cell door to escort the plaintiff to temporary lock-up (TLU) without first checking whether the plaintiff he would "be compliant or uncompliant," allegedly in violation of proper Department of Corrections protocol. Dkt. No. 1 at ¶¶2-3. He alleges that defendants Lt. Edwards, C.O. Waisman and C.O. Leaka arrived to escort him to TLU. Id. at ¶3. The plaintiff asserts that he asked Edwards to allow him a moment to pack up his personal property, a request Edwards granted. Id. at ¶¶4-5. The plaintiff says, however, that Waisman "began to become impatient and started acting aggressive, and provoking other officers to rush [the plaintiff] along." Id. at ¶5.

The plaintiff says that when he finished packing his belongings, Edwards, Waisman and Leaka "rushed inside the cell." Id. at ¶6. The plaintiff says that he stood with his chest against the wall and placed his hands behind his back to be handcuffed. Id. The plaintiff alleges that while he had his hands behind his body and Edwards was cuffing him, Waisman began repeatedly

---

[1] The plaintiff named as defendants on the first page of the complaint *Warden* Johnson and *C/O I* Johnson. Dkt. No. 1 at 1. The warden of the Milwaukee Secure Detention Facility is Steven R. Johnson. https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/MilwaukeeSecureDetentionFacility.aspx . In the body of the complaint, the plaintiff alleges that *Corrections Officer* Johnson opened his cell door on the date in question and uses the female pronoun "she" when referencing the person who opened the door. Dkt. No. 1 at ¶2. It appears that defendant Warden Johnson and defendant C.O. Johnson are different people.

punching the plaintiff in the back of the head. Id. at ¶7. The plaintiff says he asked Waisman to stop punching him, but that Waisman continued to assault him. Id. at ¶8. The plaintiff then asked Edwards why Edwards was allowing Waisman to punch him and was not directing Waisman to stop; he says that Edward "began yelling 'stop resisting!'" Id. The plaintiff alleges that all the officers began to assault him by twisting his hands in a way that "was bending them back toward his wrist while inside the cuffs causing him to endure excruciating pain which became so unbearable plaintiff knew they were trying to hurt him." Id. at ¶9. The plaintiff asserts that this was happening inside the cell, where others couldn't witness it and in violation of Department of Corrections policy because there was no video of the incident, "even though they deployed both the O.C. spray and used an Ultron II stun device against Plaintiff who was defenseless and handcuffed behind his back." Id. at ¶10.

The plaintiff states that Edwards tased him three times on his lower back leg and that Waisman used the O.C. spray on him, and reiterates that the officers "had no recording device present before they illegally entered [his] cell." Id. at ¶11. The plaintiff says that, fearing for his safety and trying to avoid further assault, he tried to "maneuver his body away from being punched;" he says that this "resulted into a wave of pulling and pushing." Id. at ¶12. He says he also tried to start working his way toward the cell door so that others could see what was happening. Id. at ¶13. The plaintiff asserts that at that point, Waisman lifted him off the floor and that all three officers slammed the plaintiff

5

to the ground hard enough to knock the wind out of him; he says that while he was trying to regain his breath, Edwards was tasing him. Id. at ¶14.

The plaintiff alleges that he suffered bruising to his wrists; knots, aches and pains to the back of his head; pain to the side of his face area; headaches; shoulder and arm pain from the twisting of his arms and wrists; and pain to his legs from being tased. Id. at 9. He is seeking $300,000 in punitive damages. Id.

    C.    Analysis

The plaintiff indicates that he was confined as a "Division Community Custody Parolee." Dkt. No. 1 at 4. He does not state whether he was awaiting revocation proceedings or had had his parole revoked. He does not indicate whether he is in custody on new charges. If the plaintiff was a pretrial detainee, his rights arise out of the Fourteenth Amendment's Due Process Clause; if he was a convicted prisoner, his rights arise out of the Eighth Amendment. See Kingsley v. Hendrickson, 576 U.S. 389, 396-97 (2015) (holding that an objective unreasonableness standard applies to claims brought by pretrial detainees while a subjective standard of whether the force was applied maliciously and sadistically applies to convicted prisoners). The court need not determine at this stage whether the plaintiff was a pretrial detainee or a convicted prisoner, however, because the Eighth Amendment standard is the more stringent one. The court will analyze his claims under that standard first.

"Correctional officers violate the Eighth Amendment when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not

when they apply it in good faith to maintain or restore discipline. Jackson v. Angus, 808 F. A'ppx 378, 382 (7th Cir. 2020) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)). In other words, where the force appears punitive in nature as opposed to having a penological justification, the force rises to the level of an Eighth Amendment violation. See Lewis v. Downey, 581 F.3d 467, 475 (7th Cir. 2009). "Whether a guard applies force in good faith to resolve a disturbance or, rather, maliciously with intent to cause harm, turns on factors including the threat reasonably perceived by the guard, the need for and the amount of force used, and the injury suffered by the prisoner." Boyd v. Pollard, 621 F. App'x. 352, 355 (7th Cir. 2015). Force may be excessive, especially in the deployment of tasers, where the inmate is not resisting or is complying. See Lewis, 581 F.3d at 476-477; Bowers v. Pollard, 345 F. Appx. 191, 197 (7th Cir. 2009).

> The plaintiff has stated sufficient facts to allow him to proceed on an Eighth Amendment claim against Lt. Edwards, C.O. Waisman and C.O. Leaka. He implies that he was being cooperative with their attempt to escort him to TLU, including making his hands available for cuffing. He says that Waisman started punching the plaintiff while Edwards was cuffing him, apparently without provocation. The plaintiff also alleges that the officers slammed him down and intentionally twisted his arms in such a way to cause him pain. It is not clear why Edwards and Waisman decided to use O.C. spray and a taser, but the plaintiff implies that there was no reason for that, either. At this stage,

the plaintiff has alleged sufficient facts to allow him to pursue a claim against Edwards, Waisman and Leaka.

As to C.O. Johnson, the plaintiff alleges only that she opened his assigned cell door in violation of a Department of Corrections protocol requiring her to determine whether or not he was going to be compliant. He has not alleged that Johnson was involved with the actual cell extraction or the alleged excessive force that followed. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)).

Finally, the plaintiff named Warden Johnson and Security Director Evers as defendants, but the complaint does not include any allegations against them. While Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff give only "a short and plain statement of the claim," and says that "specific facts are not necessary," the allegations still must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 55 (internal citations omitted)). The plaintiff's allegations do not give Warden Johnson or Security Director Evers any notice of what it is that he believes they did to violate his constitutional rights. The court suspects that the plaintiff included Warden Johnson and Security Director Evers as defendants because they are supervisors at MSDF. But for a supervisor to be liable for civil rights violations under §1983, the plaintiff must show that the supervisor knew of the

supervisee's conduct and approved of it. Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) (quoting Lanigan v. Vill. of E. Hazel Crest, Ill., 110 F.3d 467, 471 (7th Cir. 1997)). "That is, 'to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct.'" Id. "'[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable . . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.'" Id. (quoting Jones v. City of Chi., 856 F.2d 985, 992-93 (7th Cir. 1988)). The plaintiff has stated no facts leading the court to conclude that Warden Johnson and Security Director Evers were liable for the conduct the plaintiff described in the complaint and the court will dismiss them as defendants.

### III. Conclusion

The court **ORDERS** that that the plaintiff's motion for leave to proceed without prepaying the filing fee is **GRANTED**. Dkt. No. 2.

The court **ORDERS** that defendants Warden Johnson, Director Evers, and C.O. I Johnson are **DISMISSED**.

The court **ORDERS** that the U.S. Marshals Service shall serve a copy of the complaint and this order on defendants Edwards, Waisman and Leaka under to Federal Rule of Civil Procedure 4. The court advises the plaintiff that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the

court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that defendants Edwards, Waisman and Leaka must file a responsive pleading to the complaint.

The court **ORDERS** that the agency where the plaintiff is in custody must collect from his institution trust account the **$319.12** balance of the filing fee by collecting monthly payments from his prison trust account in an amount equal to 20% of the preceding month's income credited to his trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The agency must clearly identify the payments by the case name and number assigned to this case. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution must forward a copy of this order, along with his remaining balance, to the receiving institution.

The court will send a copy of this order be sent to the Warden at Fox Lake Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that failure to file documents by court-ordered deadlines and follow court orders may result in the dismissal of this case for failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the dismissal of this case without further notice.

The court will include with this order a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

"Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

The court **RETURNS** this case to United States Magistrate Judge Stephen C. Dries for further proceedings.

Dated in Milwaukee, Wisconsin this 1st day of July, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**